UNITED STATES OF AMERICA, *et al.*,

*ex. rel.* POONAM RAI, D.D.S. and

ROBIN FITZGERALD,

     *Plaintiffs,*

     *v.*

KS2 TX, P.C., *et al.,*

     *Defendants.*

Civil No. 3:17-cv-834 (JBA)

March 27, 2019

## RULING ON MOTION FOR ATTORNEY FEES

Relators Poonam Rai, D.D.S., and Robin Fitzgerald ("Relators") brought this 40-count action to recover damages and civil penalties on behalf of the United States, as well as eleven Plaintiff States, under the Federal False Claims Act ("FCA") and various State FCAs. (Third Am. Compl. [Doc. # 31] ¶ 1.)

### 1. Background and Procedural History

On January 16, 2018, the United States and Relators notified the Court of the voluntary dismissal of this action pursuant to separate Federal and State Settlement Agreements. (Not. Voluntary Dismissal [Doc. # 81] at 1.) This Notice specifically excepted from this dismissal "any claims by Relators for reasonable expenses, costs and attorneys' fees under 31 U.S.C. § 3730(d)," and under the State FCAs. (*Id.* at 2.) On January 26, 2018, the Court ordered that in light of the Notice of Dismissal, all claims arising from the Covered Conduct as defined in the parties'

settlement agreements were dismissed with prejudice, with the exception of Relator claims for expenses, costs, and fees, and with the Court retaining jurisdiction to enforce the terms of the settlement agreements. ([Doc. # 82] at 1-2.) This Motion for Attorney Fees by Relators Rai and Fitzgerald followed. ([Doc. # 96].)

Relators seek attorney's fees, costs, and expenses under both the FCA and the State FCAs, including Connecticut (Conn. Gen. Stat. § 4-278(e)), District of Columbia (D.C. Code § 2-381.03(f)(1)(C)), Georgia (Ga. Code Ann. § 49-4-168.2(i)(1)), Indiana (Ind. Code § 5-11-5.5-6(a)(1)), Louisiana (La. Stat. Ann. § 46:439.4(C)(1)), Maryland (Md. Code Ann., Health-General § 2-605(a)(4)(2)), Massachusetts (Mass. Gen. Law ch. 12, § 5F(3)), New Mexico (N.M. Stat. Ann. § 27-14-9(A)), Oklahoma (Okla. Stat. tit. 63, § 5053.4(A)(3)), Texas (Tex. Hum. Res. Code Ann. § 36.110(c)), and Virginia (Va. Code Ann. § 8.01-216.7 (A)). (*Id.* at 1.)

Relators concede that they filed this case after Relators Adam Abendano ("Abendano") and Michael Greenwald ("Greenwald") filed their own Federal FCA actions "against various defendants related to Kool Smiles[,]" (*id.* at 2), but argue that those complaints made no claims under any State FCAs. Relators alleged "four [prevailing] theories of liability: 1) medically unnecessary dental crowns, 2) medically unnecessary extractions, 3) medically unnecessary pulpotomies, and 4) violations of the Texas Medicaid 'First Dental Home' program (the 'FDH' claim)." (*Id.* at 3 (citing Third Am. Compl.).) Relators' Complaint "pled violations of [both] the Federal FCA and violations of" its State FCA analogues. (*Id.*)

With respect to the first three of the prevailing theories of liability, Abendano brought these claims as Federal FCA claims before Relators did, although Relators brought substantively identical claims as State FCA claims before any other relator did so. Additionally, Relators were the first to file the FDH claim.

"On December 21, 2017, the United States, Defendants, and Relators executed a settlement agreement[,]" obligating "Defendants to pay $23.9 million ($14,244,073 plus interest to the federal government, and $9,655,926 plus interest to the Plaintiff States)." (*Id.* (citing Ex. 2 to Mot. Fees).)

### 2. Relators' Attorney Fee Petition

Relators represent that the total time expended by the Berger Firm is $1,197,024, the total time for the Kreindler Firm is $39,197, and the total time for predecessor counsel is $82,500, which sum up to $1,318,721. (*Id.* at 9.) However, Relators "removed time for certain categories of work, including, inter alia: a) time spent negotiating 'first to file' issues with relators in other cases filed against Kool Smiles, b) time spent negotiating 'relator's share' with the government, and c) *all* time expended by predecessor counsel." (*Id.* (emphasis in original).) Mr. Kreindler further attests that the time records for his firm "reflect reductions made after applying billing judgment to each time and billing entry." (Kreindler Dec. [Doc. # 96-5] ¶ 10.) With a total reduction of $380,853,[1] Relators seek an attorney's fee award of $937,868. (*Id.*) Relators also seek an award of $67,345 in costs and expenses (consisting of $39,193 in expenses of the Berger Firm, $518 in expenses of the Kreindler Firm, and $27,634 in expenses of predecessor counsel). (*Id.* at 10.)

Defendants "do not dispute that Plaintiffs are entitled to receive some attorneys' fees and costs arising from the settlement of this action" but contend that this claim "is wildly bloated and excessive by any measure." (Opp'n to Mot. Fees [Doc. # 102] at 1.)

---

[1] Relators' Fee Motion identifies the total reduction amount as $378,848, but in their Reply, Relators concede that they erred in including two time entries "that appear to partially relate to first to file issues" and therefore consent to reducing their original fee claim of $939,873 by $2,005. (Reply to Defs.' Opp'n to Mot. Fees [Doc. # 103] at 9.) Accordingly, the adjusted total reduction amount is $380,853.

According to Defendants, "Plaintiffs are not prevailing relators on most of the claims for which they seek attorneys' fees and costs, and thus are not entitled to recover for work on such claims, because they either (1) did not file them first, or (2) were not successful on them, as required for recovery under the fee-shifting provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(1)." (Opp'n to Mot. Fees at 1-2.) Defendants further contend that the Relators' requested fee amount "is grossly excessive, unreasonable and predicated on time entries that are facially inadequate in a variety of ways[,]" and that any "award of fees and costs to Plaintiffs should not exceed $112,500.00." (*Id.* at 2.)

Defendants argue that Relators' fee request is disproportionate because "[t]he Texas FDH allegations were" the sole "contribution by Plaintiffs to the allegations encompassed by the Covered Conduct" in the Settlement Agreement, with "Relator Abendano first fil[ing] the remaining allegations in the Covered Conduct." (*Id.* at 5.) Defendants note that under the federal Settlement Agreement, Relator Abendano received a "relator's share of approximately $1.9 million, nearly four times the share collectively allocated to Plaintiffs (approximately $512,000)[.]" (*Id.*) However, as Defendants also claim, "[u]nlike the federal agreement, the settlement agreements with the participating states do not allocate shares among the relators." (*Id.* n. 2 (citing Pearlstein Aff. ¶ 8).) Moreover, Defendants argue, because Abendano settled his claim for fees and costs for only $225,000, Relators' claim for fees and costs in excess of $1 million is plainly unreasonable. (*Id.* at 6, 10.)

"In the Second Circuit, '[t]he lodestar method is ordinarily the starting point in determining the amount of fees that may be awarded.'" *Pugach v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153, 155 (E.D.N.Y. 2008) (quoting *Seitzman v. Sun Life Assurance Co. of Canada, Inc.*, 311 F.3d 477, 487 (2d Cir. 2002)). "Under this method, attorneys' fees are calculated by taking 'the number

of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (other citation omitted). "A district court's 'choice of rates [is] well within [its] discretion.' " *Id.* (quoting *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994)).

### a. Reasonable Hourly Rate

In determining what constitutes a reasonable hourly rate, this Court "may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008). In the general run of cases, "[w]e presume . . . that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Id.* "This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Id.*

This case was originally filed in Houston, Texas, and subsequently was transferred to the District of Connecticut on motion by the United States. Relators were represented initially by James Moriarty, P.C., which seeks reimbursement of costs but no fees, and then shortly after the case was initiated in 2011 became represented by Berger & Montague, P.C. (the "Berger Firm") and Kreindler & Associates (the "Kreindler Firm"). (Mot. Fees at 2.) Lead counsel Daniel Miller of the Berger Firm seeks an hourly rate of $725 and Attorney Kreindler seeks an hourly rate of $600.

Defendants contend that all of the hourly rates sought by attorneys and paralegals at the Berger Firm are excessive but do not challenge Kreindler's rate.

Relators support the reasonableness of their requested hourly rates with the Declaration of Mr. Miller, ([Doc. # 96-2]), the Declaration of Marc S. Raspanti, ([Doc. # 96-4]), and the Declaration of Mr. Kreindler, ([Doc. # 96-5]). Mr. Miller details his experience in FCA claims, including more than 16 years as a Deputy Attorney General for the Delaware Department of Justice, where he "tried more than 125 cases to jury verdict[,]" and 15 years of experience investigating and litigating FCA cases. (Miller Dec. ¶ 2.) He is a "past President of the National Association of Medicaid Fraud Control Units[.]" (*Id.*) The Berger Firm, as of the filing of the fee petition, represented "FCA whistleblowers in federal courts across the country, including in California, Connecticut, the District of Columbia, Florida, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New Mexico, New York, Nevada, Pennsylvania, Rhode Island, South Carolina, and Texas." (*Id.* ¶ 4.)

Mr. Miller views his law firm as "one of the top complex commercial litigation plaintiff's firms in the country." (*Id.* ¶ 24.) The attorneys from the Berger Firm who worked on this case range from being 5 years out of law school to 60 years out of law school, with the median being 25 years out of law school. (*Id.* ¶ 25.) These attorneys seek hourly rates ranging from $405 to $975, with a median rate of $675. (*Id.*) Mr. Miller attests that all of these attorneys focus their practice on complex commercial litigation, and that "the rates charged for each attorney are reasonable given their relative experience, credentials, and professional acumen." (*Id.* ¶ 26.)

In his Declaration, Marc S. Raspanti attests that he is a 1984 law school graduate who has represented whistleblowers for approximately 30 years, also "frequently act[ing] as defense counsel in white collar fraud cases including health care fraud, anti-kickback investigations, SEC violations,

tax prosecutions, political corruption, and defense contracting cases." (Raspanti Dec. ¶¶ 2-4.) He has "published more than two dozen articles regarding whistleblower cases and ha[s] spoken at more than 80 conferences over a period of more than 25 years." (*Id.* ¶ 5.) He "lecture[s] and comment[s] frequently on the False Claims Act at national organizations, law schools, and for national publications." (*Id.*)

Mr. Raspanti was "asked by the attorneys for the Relators in this action to offer [his] opinion regarding whether the hourly billing rates of the attorneys in the case at bar are reasonable, and whether the work in this case was reasonable at the time it was performed." (*Id.* ¶ 8.) Mr. Raspanti notes that plaintiff-side FCA litigation "is an extremely risky, complex and time-consuming enterprise[,]" in which "[v]irtually all of the work is on a contingent basis, such that the lawyers that undertake these cases bear most of the financial risk involved, both in terms of their own time, and in terms of out-of-pocket costs." (*Id.* ¶ 9.) Further, attests Mr. Raspanti, "FCA cases have additional and unique risks[,]" including "procedural hazards not present in many types of civil litigation, including the risk of not being the 'first to file,' changes in policy, practice and procedure from the Executive Branch, the risk that the allegations have somehow been publicly disclosed, and the risk of not being considered an original source of the allegations." (*Id.* ¶ 10.) "In short," he concludes, "FCA practice is fraught with traps for the untrained or unwary." (*Id.*)

Mr. Raspanti claims familiarity with this case. (*Id.* ¶ 11.) He states that "Mr. Miller's experience as a False Claims Act lawyer is deep, his reputation is impeccable, and his abilities are in my opinion stellar." (*Id.*) Accordingly, Mr. Raspanti concludes that Mr. Miller's hourly rate of $725 is "certainly in line with if not less than other FCA experts of similar skill, experience, and reputation." (*Id.*) Mr. Raspanti is "also very familiar with [Mr.] Kreindler, having worked with and

against him over many years[,]" and states that Mr. Kreindler is "a highly skilled FCA practitioner." (*Id.*) He offers no opinion on the hourly rates claimed which exceed $725.

The attorneys and paralegals for whom fees are sought include the following:

| Name | Years Out of Law School | Hourly Rate |
|---|---|---|
| **Attorneys** | | |
| Azorsky, Gary | 35 years | $745.00 |
| Broderick, Carol | 60 years | $675.00 |
| Clairmont, Joy | 20 years | $625.00 |
| DeSantis, Jonathan | 5 years | $420.00 |
| Ellerbe, Will | 7 years | $480.00 |
| Miller, Daniel | 25 years | $725.00 |
| Noteware, Ellen | 25 years | $685.00 |
| Paul, Russell | 28 years | $685.00 |
| Pollack, Roslyn | 45 years | $675.00 |
| Preston, Casey | 18 years | $555.00 |
| Savett, Sherrie | 45 years | $975.00 |
| Thomas, Susan | 38 years | $770.00 |
| Waters, Benjamin | 9 years | $405.00 |
| **Paralegals** | | |
| Filbert, David | 30 years | $335.00 |
| Mecoli, Bill | 30 years | $275.00 |

(Miller Dec. ¶ 25.) Miller states that "[t]he academic and professional records of each attorney are exemplary[,]" and that each "focused his or her practice on complex commercial litigation, and the rates charged for each attorney are reasonable given their relative experience, credentials, and professional acumen." (*Id.* ¶ 26.) "By way of illustration," Miller provides relevant professional background on the four attorneys listed above who still work at his firm: Joy Clairmont, Jonathan DeSantis, Russell Paul, Sherie Savett, and Susan Thomas. (*Id.*)

Clairmont, a shareholder in the Berger Firm's whistleblower practice group, has over fifteen years' experience investigating and litigating whistleblower cases across (and outside of) the medical industry, and "has participated in several significant and groundbreaking cases involving fraudulent drug pricing." (*Id.*) DeSantis also regularly represents whistleblowers as an associate in

the same group, and before joining the Berger Firm, he clerked for a federal district judge and worked as a commercial litigation associate at a large firm. (*Id.*) Paul is a shareholder in the same practice group, among others, and "concentrates his practice on securities class actions and derivative suits, complex securities and commercial litigation matters, False Claims Act suits and consumer class actions[,]" beginning his career as an associate at Skadden, Arps, Slate, Meagher & Flom. (*Id.*) Savett is Chairwoman of the Firm, Managing Shareholder of the Firm's Securities Fraud Group, and Chair of the Firm's whistleblower practice group. (*Id.*) She "has practiced in the area of securities litigation and class actions since 1975." (*Id.*) "In addition, she actively participated in one of the largest groups of qui tam settlements to date, which involved Medicare and Medicaid fraud in connection with Average Wholesale Pricing." (*Id.*) She "speaks and writes frequently on . . . False Claims Act/qui tam litigation[.]" (*Id.*) Finally, Thomas is a shareholder in the whistleblower practice group, and although she "has substantial complex litigation experience" in the context of "complex securities and derivative actions" she now "concentrates her practice on qui tam litigation." (*Id.*)

To litigate this case, Mr. Raspanti attests that Mr. Miller and Mr. Kreindler had to proceed under a "particularly risky" theory of liability against "well-heeled and well-financed defendants." (Raspanti Dec. ¶ 12.) According to Mr. Raspanti, "a complex legal and factual investigation was required to understand the alleged fraud, and to plead those facts and law in a manner that would satisfy the stringent pleading requirements applicable to FCA cases." (*Id.* ¶ 13.) The complexities in this case, as delineated by Mr. Raspanti, include the Defendants' elaborate corporate structure, the number of government programs involved (including more than 10 Medicaid programs), the number of statutes, regulations, and program rules implicated by the facts, the number of

government entities participating in the investigation and settlement, and the level and types of communication required with prosecutors. (*Id.*)

Mr. Kreindler represents that he has been admitted to the bar since 1987 and has concentrated his practice exclusively on the representation of FCA relators since 1994. (Kreindler Dec. ¶ 3.) Like the Berger Firm, Mr. Kreindler explains that his FCA practice is a national one, representing relators around the country. (*Id.* ¶ 6.) His normal billing rate is $600 per hour, which he believes to be "reasonable, if not below the rates normally charged by most attorneys of comparable experience who regularly and successfully practice in this area of law." (*Id.* ¶ 7.)

While the Court, guided by *Arbor Hill*, presumes that a reasonable, paying client would in most cases hire counsel from within the client's district, the Court is persuaded that given the breadth and complexity of this case, a reasonable, paying client would likely hire national counsel experienced in the type of investigation and litigation implicated here. Among other factors, this was a national case. Relators first filed this action in Texas, and Relator Abendano first filed his action in the District of Arizona. Moreover, a review of the docket in this case (17-cv-834) and the sister case *Greenwald v. Kool Smiles*, (10-cv-1100), shows that no party, whether relator or defendant, was represented solely by counsel from within this District or the Southern District of Texas (where Relators first filed their complaint), providing further indication that a reasonable, paying client would be likely to hire national counsel to investigate and litigate this case.

The Court is satisfied, based on the declarations submitted in support of the fee petition, that the hourly rates requested by Relators for Miller and Kreindler are reasonable given the complexity and risk presented by the case, and that a reasonable client would likely understand the importance of securing highly experienced counsel to investigate and litigate this case, whether or

not such counsel could be found within this District or willing to work at the lower hourly rates standard to this District. There is no basis provided for approving fees above $725.

**b. Reasonable Hours Expended**

Turning to the amount of the fees, the Court is unmoved by Defendants' argument that the *settled* amount of Relator Abendano's attorney's fee claim dictates or limits the proper lodestar in Relators' case where nothing is known about that settlement other than it was an arms-length agreement solely between Abendano and Defendants. No court made any findings as part of that process as to what constituted the number of hours reasonably expended or an overall lodestar amount.

Second, Defendants challenge the idea that Relators can claim attorneys' fees—under either the Federal FCA or State FCAs—for bringing claims under State FCAs that resulted in substantial recoveries, insofar as those claims were based on factual allegations similar or identical to those first filed by Abendano in Abendano's Federal FCA action. Defendants do not challenge the award of attorneys' fees to Relators for "fees and costs relating to the Texas FDH allegations[,]" but contend that Relators are not entitled to fees for work done on any other claims. (Opp'n to Mot. Fees at 9.) They contend that Relators are not entitled to fees under the Federal FCA for their work on prevailing State FCA claims. Plaintiffs present no argument that they are entitled to fees under the Federal FCA for their work on prevailing State FCA claims but seek fees on those state claims under the State FCAs themselves.

Although the State FCAs contain first-to-file bars, there is no claim by Defendants that Relators were not the first filers under each State's FCA. In their Opposition, Defendants do not substantively address independent state statutory provisions regarding relator shares and attorneys' fees under Connecticut law or other analogous State FCAs, instead merely asserting,

with no citation to any state statute, that "the first-to-file bar of the FCA and cognate state statutes precludes the pursuit of claims by relators based on factual allegations that were first filed by somebody else." (Opp'n to Mot. Fees at 7 (citing Federal FCA).) Defendants' assertion is unsupported by the language of the state statutory first-to-file bars.[2]

The Court can only award "reasonable attorneys' fees and costs" to a prevailing relator who "substantially contributed to the prosecution of the action." Conn. Gen. Stat. § 4-278(e). Here, Relators received not only a relators' share of approximately $512,000 from the federal settlement, but also a $1.51 million share from the Medicaid Participating States' recovery. (Reply at 4 (citing Ex. B, Letter from Texas Attorney General's Office).) Attorney Miller attests that (1) "[n]either the Abendano Action nor the Greenwald Action pled any claims of any kind under any of the State" FCAs; (2) "[a]s per the settlement agreement, the federal and state government parties to the settlement allocated $9,655,926 of the settlement to the state plaintiffs[,]" and (3) Relators "received the entire Relator's Share as to all claims under the State FCA's, i.e., neither the Abendano Action, the Greenwald Action (or any other FCA action), led to any recovery for any other relator." (Miller Dec. ¶ 13.) Defense counsel Mark Pearlstein states that over the course of his representation of Defendants in this action, as well as the government investigation that preceded the settlement

---

[2] Those State FCA first-to-file bars do not appear to preclude claims such as those made by Relators here under the State FCAs. For example, Connecticut's FCA's first-to-file bar provides that "[i]f a person brings an action *under this section*, no person other than the state may intervene or bring a related action based on the facts underlying the pending action." Conn. Gen. Stat. § 4-277(d) (emphasis added). By including the phrase "under this section," Connecticut's FCA only bars subsequent related actions where a previous action has already been filed under the Connecticut FCA. Thus Relator Abendano's earlier-filed federal FCA action does not impact the State FCAs.

of this action and the related actions, "Defendants had no contact with relators' counsel during the investigation, and there was no litigation with relators[.]" (Pearlstein Aff. ¶¶ 2, 5.) By contrast, according to Pearlstein, the Government did extensive work investigating this case, with "thousands of documents" requested and received, "taking testimony from witnesses, and meeting and negotiating with Defendants regarding substantive issues[.]" (*Id.* ¶ 4.) Pearlstein states that Relators' counsel—as well as counsel for the other relators in this and the related cases—"played no role in these activities." (*Id.*)

Relators are entitled to an award of *some* attorney's fees for bringing claims under the State FCAs that no other relator at the time had brought, as recognized by the states themselves granting Relators—and no other relators—a relator share of the states' recovery. Further, the Court's review of Relators' Third Amended Complaint makes clear that Relators performed work identifying the complex corporate structures and individual clinic locations that together operated as Kool Smiles and related entities across all of the Plaintiff States, investigative work that the Court presumes assisted the States in prevailing in their claims against Defendants. But Relators do not explain in any level of detail what exactly they did otherwise to investigate and move the ball forward on these claims in a manner substantially contributing to the prosecution of this action, or what value they brought to the investigation of the state claims separate from information that the Government was already aware of via Abendano or through its own investigation. A review of the counts in Relators' Third Amended Complaint shows that the State FCA allegations are identical to those pled in support of the Federal FCA counts. While the Relators substantially contributed to the prosecution of the State FCA claims by (1) bringing them when no one else had, (2) clarifying who all of the Defendants were, providing some valuable investigatory work, (3) determining which states could make claims, and (4) performing legal research necessary to draft the various State

FCA counts, the total amount of attorney's fees sought is disproportionate. Except for the Texas FDH claim, the substance of the State FCA claims does not differ from the Federal FCA claims that Abendano had already brought to the Government's attention. However, the Relators' contribution of the State FCA claims, as well as the Texas FDH claim, entitles them to a fee award but at a substantial discount to eliminate duplicative work performed on the first-filed cases. The Court determines that in order to eliminate duplicative work, Relators' fee petition should be subjected to a 40% reduction. Combined with a further 15% reduction for inadequate entries and subject to the exclusion of some time entries, both discussed below, the Court will award Relators 45% of their hours. This proportion is slightly higher than the approximately 40% of the overall settlement agreement that was payable to the Medicaid Participating States ($9,655,926.51 out of $23,900,000), which the Court finds appropriate given that Relators first filed both the State claims and the Texas FDH claim, but where the State claims substantively duplicated existing Federal FCA claims.

### i. Defendants' Objections

In addition to Defendants' claim that Relators' fee request is grossly excessive, Defendants raise the following objections, including inadequacies in Relators' time entries.

First, Defendants argue that "Plaintiffs asserted a variety of claims in their lawsuit that are not part of the settlement[,]" and that because Relators' "time entries . . . only rarely describe the particular subject matter to which a particular entry relates . . . . it is safe to conclude that many of the time entries . . . are outside the realm of the settlement." (*Id.* at 11-12.) The Court agrees that it is often unclear which of Relators' time entries relate to work on successful theories of liability—i.e. covered conduct in the settlement that Relators were first to file. Although time spent on non-prevailing theories of liability need not categorically be denied where the work on non-prevailing

theories substantially overlaps and intertwines with the work done on theories that were reflected in the settlement, determining the "number of hours reasonably expended on the litigation[,]" Relators did assert unsuccessful claims for which some reduction is required, absent any demonstration of overlap with successful claims. *See, e.g., Crawford v. City of New London*, No. 3:11-CV-1371 JBA, 2015 WL 1125491, at \*8–9 (D. Conn. Mar. 12, 2015) (reducing fee by 25% to reflect partial and limited success where "Plaintiff only prevailed at trial on the excessive force count against one of the defendants in a case that began with ten counts against ten defendants with a jury award of $50,000.").

Second, Defendants fault Relators for block-billed time entries "coupled with vague and insufficient descriptions of tasks and facially excessive periods of time." (Opp'n to Mot. Fees at 12.) Specifically, Defendants take issue with the time entries of Carole Broderick "spanning six, seven and eight hours, with cursory descriptions such as 6.50 hours for 'Telephone call with Dan Miller; additional research.' " (*Id.*) Defendants argue that the Court should reduce the total numbers of hours used for the lodestar calculation in order to account for the fact that "the billing records 'lump together multiple tasks, making it impossible to evaluate their reasonableness.' " *United States ex rel. John Raggio v. Seabord Marine, Limited, et. al.*, No. 1:10-CV-01908-BJR, 2017 WL 2591288, at \*7 (D.D.C. May 4, 2017) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).). In response, Relators do not defend the propriety of their block-billed time entries but maintain that they are the exception rather than the rule, and thus there should be no reduction. (Reply to Defs.' Opp'n to Mot. Fees at 6-7.) In fact, the Court found only a minority of the time entries to be block-billed such that it was difficult to ascertain the time spent on specific tasks, with the vast majority of time entries not suffering from this flaw. However, many of the non-descriptive cryptic time entries made by Attorney Broderick impede the Court's ability to

evaluate the reasonableness of her time spent on individual tasks, and these time entries, comprising 68.5 hours, will be excluded:

| Date | Hours | Entry |
|---|---|---|
| 8/21/12 | 6.5 | Telephone call with Dan Miller; additional research |
| 8/22/12 | 7.5 | Additional research; draft memo to Dan Miller and Joy Clairmont |
| 8/23/12 | 8 | Review/revise memo; forward same to Dan Miller and Joy Clairmont; additional research |
| 9/20/12 | 7.5 | Legal research; review various documents; review complaint |
| 10/18/12 | 7.5 | Legal research; review various documents; review complaint |
| 10/19/12 | 8 | Legal research; review various documents; review complaint |
| 10/23/12 | 7.5 | Legal research; review various documents; review complaint; confer with Joy Clairmont |
| 10/24/12 | 8 | Legal research; review various documents; review complaint |
| 10/25/12 | 8 | Legal research; review complaint; review numerous |

| | | documents; conference call with relator and Joy Clairmont |
|---|---|---|

There are other entries by Broderick that contain more detail by specifying, e.g., the purpose of the legal research performed, but which routinely are billed in rote 7-to-8 hour blocks on consecutive days. For these time entries, the Court will reduce the 210 hours claimed by 50%:

| 6/27/12 | 7.5 | Research re: growing acquisitions and other business development means; confer with Dan Miller |
|---|---|---|
| 6/28/12 | 8 | Research re: growing acquisitions and other business development means; confer with Dan Miller |
| 6/29/12 | 7.5 | Research re: growing acquisitions and other business development means |
| 8/20/12 | 7 | Research re: identify owners and locations |
| 9/4/12 | 7.5 | Research re: regulatory matters for Georgia; research for appropriate procedures; review of documents |

| | | |
|---|---|---|
| 9/5/12 | 8 | Review of documents; additional research regarding compliance program and excessive procedures |
| 9/6/12 | 7.5 | Research re: excessive procedures including crowns; draft memo; review of documents |
| 9/10/12 | 8 | Research re: Kool Smiles Business Model; review of documents; research re: Kool Smiles Holding Corp. |
| 9/11/12 | 8 | Research re: Kool Smiles Business Model; review of documents; research re: Kool Smiles Holding Corp.; prepare memo to Dan Miller and Joy Clairmont |
| 9/24/12 | 7.5 | Legal research; review/revise complaint |
| 9/25/12 | 7 | Review/revise complaint; legal research |
| 9/27/12 | 8 | Review/revise complaint; meeting with Dan Miller; legal |

| | | |
|---|---|---|
| | | research; review various documents |
| 9/28/12 | 7 | Legal research; review/revise complaint; review various documents |
| 10/1/12 | 7.5 | Legal research; review documents related to corporation |
| 10/2/12 | 7 | Review of numerous documents relating to various corporations involved with Kool Smiles |
| 10/4/12 | 8 | Review of documents; legal research regarding various corporations involved with Kool Smiles |
| 10/8/12 | 7.5 | Legal research; review second amended complaint |
| 10/9/12 | 7 | Legal research; review second amended complaint; review documents |
| 10/10/12 | 7.5 | Review second amended complaint; draft changes for third amended complaint |

| | | |
|---|---|---|
| 10/11/12 | 7.5 | Draft changes for third amended complaint |
| 10/12/12 | 7.5 | Draft changes for third amended complaint; legal research |
| 10/15/12 | 7 | Legal research; draft changes for third amended complaint |
| 10/16/12 | 7 | Draft third amended complaint |
| 11/2/12 | 7.5 | Review/revise complaint; additional research; confer with Dan Miller regarding complaint revisions |
| 11/5/12 | 7.5 | Draft revisions to the complaint; additional research |
| 11/6/12 | 7.5 | Draft revisions to the complaint; additional research; review numerous documents |
| 11/8/12 | 8 | Draft revisions to the complaint; additional research; review numerous documents |
| 11/9/12 | 7.5 | Draft revisions to the complaint; additional research |

The total hours to be found reasonable for Attorney Broderick's work is 132 hours.[3]

Insufficiently specific time entries, where they "are too vague for a court to determine the reasonableness of time spent[,]" *Doe v. Darien Bd. of Educ.*, No. 3:11CV1581 (JBA), 2015 WL 8770003, at *8 (D. Conn. Dec. 14, 2015) (citation omitted), are a problem elsewhere in Relators' submission.[4] *See id.* ("Courts in this district, including this Court, have reduced fee awards when time entries do not refer to the specific matter worked on.") The following are examples of such deficient time entries:

| Attorney/Paralegal | Date | Hours | Entry |
|---|---|---|---|
| Preston | 6/8/11 | .6 | "Review and analysis of documents" |
| Preston | 7/13/11; 7/19/11; 7/21/11; 7/22/11; 8/2/11; 8/17/11; 9/7/11; 10/6/11; 10/10/11; 1/13/12; 1/25/12; 1/30/12 | .2; .4; .3; .2; .1; .2; .7; .2; .2; .2; .1; .1 | "Correspondence" |

---

[3] By the Court's calculation, Broderick claims a total of 305.5 hours. The Court infers that where Relators redacted both the narrative time entry *and* the amount claimed, Relators intend to signify that those are hours that they have voluntarily excluded. In contrast, where only a single phrase or clause is redacted in an otherwise non-redacted time entry, (*see, e.g.*, Daniel Miller's 5/3/11 entry at 13), the Court understands Relators to have redacted that text in order to protect attorney-client privilege or work product. The latter category of redactions are few and far between, have not been objected to, and do not frustrate the Court's ability to determine the reasonableness of the work performed.

[4] The Court also recognizes that Relators voluntarily excluded from their fee request all time expended by predecessor counsel, which totaled $82,500. (Mot. Fees at 9.)

| | | | |
|---|---|---|---|
| Filbert | 2/6/18 | 1.8 | "Kool Smiles Excel work" |
| Miller | 7/28/11 | 4.4 | "Mtg with co-counsel; doc review; legal research" |
| Miller | 2/6/13 | 3.2 | "legal research; internet research" |
| Clairmont | 10/2/12; 10/3/12 | 1; 1 | "Legal research" |

These insufficiently specific time entries prevented the Court from ascertaining how much of the fee sought should be attributed to work on non-prevailing claims. To adjust for this deficiency, the Court will reduce Relators' claim for fees by 15% overall. *See Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records" was not abuse of discretion); *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10CV1827 (JBA), 2018 WL 3918185, at *9 (D. Conn. Aug. 16, 2018) ("Because neither Defendants nor the Court are in a position to discern patent-only fees with any precision from C&D's time records, which were 'block-billed or impermissibly vague as to the tasks performed,' the Court finds that reducing the award by 10% reasonably accounts for fees which related solely to Plaintiff's patent claim, while abiding by its earlier finding that the large majority of the fees were intertwined such that they cannot be separated from the CUTPA claim."); *Andrews v. City of New York*, No. 14-CV-1721 FB CLP, 2015 WL 5773961, at *8 (E.D.N.Y. Sept. 29, 2015) ("Where entries on a time sheet are vague or duplicative or otherwise insufficient, a court need not itemize

individual entries as excessive; rather, it may make an across-the-board reduction, or percentage cut, in the amount of hours." (internal quotation marks and citations omitted)).

Third, Defendants contend that "fees incurred by [Relators] after Defendants reached an agreement in principle with the government on October 9, 2015 are not recoverable, as they do not relate to the furtherance of a successful resolution of the case." (Opp'n to Mot. Fees at 13-14 (citing 31 U.S.C. § 3730(d)(1))). But the statutory provision cited by Defendants provides only that prevailing relators shall receive "reasonable attorneys' fees and costs[,]" 31 U.S.C. § 3730(d)(1), and contains no express or implied rule that fees for work facilitating a settlement or preparing a fee petition are non-recoverable. Further, Relators' lead counsel Daniel Miller represents that "[p]rior to the filing of the instant motion for fees, [he] attempted to negotiate a resolution of the attorney's fee dispute with opposing counsel on two separate occasions" in July and August of 2016, with no response from Defendants. (Miller Dec. ¶¶ 6-8.) Defendants concede that Relators are entitled to some attorney's fees and only dispute the amount of fees sought here. In light of the uncontested fact that Relators are entitled to some fees but given Defendants' apparent unwillingness to engage in any negotiation over the amount, the work Relators were required to expend to prepare this petition to protect their statutory right to fees is recoverable as "reasonable attorneys' fees[.]" 31 U.S.C. § 3730(d)(1).[5]

### c. Claimed Expenses

Finally, Defendants challenge the Relators' $67,345 claim for costs and expenses as "unreasonable and lacking in adequate support." (Opp'n to Mot. Fees at 14-15.) Defendants

---

[5] For time spent post-settlement (October 9, 2015) and pre-fee petition to finalize and effectuate the settlement, Defendants raise no specific objections to the time entries.

contend that the Berger Firm's research costs are non-recoverable because the invoices do not make clear whether the research related to non-prevailing theories or to "matters such as relators' share and first-to-file issues." Defendants also challenge (1) the Berger Firm's $6,000 in travel costs as excessive given the fact that Relators had Texas counsel, (2) an unexplained $8,114.46 payment by predecessor counsel to Tsongas Litigation Consulting, given that counsel's brief involvement in this case, and (3) $4,750 in payments by predecessor counsel for "Articles Written on Kool Smiles" and "White Paper-Kool Smiles" to "OX & CO, LLC." (*Id.* at 15.) In their reply, Relators respond to none of these arguments.

The Court agrees with Defendants that the Berger Firm's research costs are not recoverable unless the invoices or an attorney declaration establishes that the research related to prevailing theories, which Relators fail to do. The Court will therefore not award Relators' $27,875.99 research expenses. Similarly, absent any explanation from Relators regarding the purpose of the Berger Firm's travel expenses or the objected-to expenses of predecessor counsel, the Court agrees with Defendants that the $6,302.96 in travel expenses, as well as the $8,114.46, $2,750, and $2,000 expenses charged to Tsongas Litigation Consulting and OX & CO, LLC, are not recoverable. Subtracting those expenses from Relators' $67,345 claim for costs and expenses, the Court awards $20,301.59 in costs and expenses.

### 3. Renewed Motion for Leave to File Sur Reply

After this Motion was fully joined, Defendants moved for leave to file a sur-reply, arguing that "Plaintiffs' reply raises several novel issues and arguments that Defendants did not have the opportunity to address in their opposition brief." ([Doc. # 104].) The Court denied Defendants' Motion for Leave to File Sur Reply "for lack of specificity and thus lack of good cause." ([Doc. # 106].) Defendants then renewed their Motion, attaching their proposed sur-reply as an exhibit.

([Doc. # 107].) The rules of this Court provide that "[n]o sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause." D. Conn. L. Civ. R. 7(d). The Court finds that of the issues Defendants seek to address in their proposed sur-reply, the only one raised for the first time by Relators in their reply is Relators' argument concerning the constitutionality of reading the Federal FCA to preempt State FCAs. Because the Court need not, and does not, reach this argument by Relators, Defendants' Motion for Leave to File Sur Reply is denied in part as moot and in part for lack of good cause, insofar as the other issues the sur-reply addresses all arose from Relators' original Motion for Attorneys' Fees, and could have been—and in fact largely were—addressed by Defendants in their Opposition.

4. **Reductions**

For the reasons explained previously, the Court hereby reduces Relators' requested fee award of $937,868 as follows:

- Gary Azorsky's $745 hourly rate will be reduced to $725
  - Instead of the requested $2,458.50,[6] he will be awarded $2,392.50, a $66 reduction
- Sherrie Savett's $975 hourly rate will be reduced to $725
  - Instead of the requested $6,532.50,[7] she will be awarded $4,857.50, a $1,675 reduction
- Susan Thomas's $770 hourly rate will be reduced to $725
  - Instead of the requested $1,078, she will be awarded $1,015, a $63 reduction

---

[6] *See* Note 3, *supra.*

[7] *See* Note 3, *supra.*

- Carole Broderick claims a total of 305.5 hours at $675, for a total of $206,212.50. Awarding instead 132 hours at the same rate in the amount of $89,100 results in a reduction of $117,112.50.

- On the reduced amount of $818,951.50 ($937,868 - $66 - $1,675 - $63 - $117,112.50), the Court will further reduce the claimed fees by 55% overall, including a 40% reduction to eliminate duplicative work performed on the first-filed cases and a 15% reduction to correct for insufficiently specific time entries (accounting for work performed on non-prevailing theories), resulting in a final award of $368,528.18.

## 5. Conclusion

In total, the Court awards $388,829.77, including $368,528.18 in attorney's fees and $20,301.59 in costs and expenses. The Court has considered the parties' other arguments and finds them unavailing. For the reasons set forth above, Relators' Motion for Attorneys' Fees, Costs, and Expenses is GRANTED in part and DENIED in part. The Court orders Defendants to pay Relators' attorneys' fees and costs, in the amount of $388,829.77.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of March 2019.